UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re Grace J. Hersh, <br><br> Debtor. | Bankruptcy No.  11-B-35800 <br> Chapter 13 <br> Judge Manuel Barbosa |
|---|---|

## MEMORANDUM OPINION

This matter comes before the Court on the Debtor's Amended Chapter 13 Plan filed June 29, 2012, and unsecured creditor Joseph D. Seligmann's objection thereto.  For the reasons set forth herein, Mr. Seligmann's objection is granted and sustained, and confirmation of the June 29, 2012 Plan will be denied.  The Debtor is granted 14 days to file an amended plan consistent with this Opinion.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## FACTUAL BACKGROUND

After holding an evidentiary hearing on June 28, 2012, this Court gave a partial ruling on unsecured creditor Joseph Seligmann's objections to confirmation of the Debtor's Chapter 13 Plan. For reasons stated on the record on August 30, 2012, I overruled and denied Mr. Seligmann's objections under Section 1325(a)(3) and (7), that the filing of the petition or proposal of the plan

**DRAFT 10/30/12**

were not in good faith, and under Section 1325(a)(6), that the plan was not feasible. However, I

reserved ruling on Mr. Seligmann's objection under Section 1325(b)(1), that the plan did not provide

for application of all of the Debtor's projected disposable income. I found that the Debtor's

testimony at the June 28th hearing, as well as her schedules to her bankruptcy petition, were

ambiguous as to her income and expenses, and therefore asked for further testimony to clarify these

ambiguities. The Debtor presented further testimony on September 27, 2012, and based on that

testimony, I find that the Debtor's plan does not provide for application of all of her projected

disposable income.

Ms. Hersh filed a petition for protection under Chapter 13 of the Bankruptcy Code on August

31, 2011. Pre-petition, Ms. Hersh had separated from her husband and a divorce proceeding had

been filed. The divorce proceeding was bifurcated, with the divorce court dissolving the marriage

and awarding custody of the couple's only child to Ms. Hersh, but was still proceeding as of the

bankruptcy petition date on the issue of division of property and on the issue of maintenance and

support. Ms. Hersh is not employed and was not employed as of the time of the petition. Instead,

she receives all of her income from her ex-husband pursuant to an order entered by the divorce court

entered in July 2009, pursuant to which the ex-husband was ordered to "continue to pay marital

expenses and support and maintain the status quo...." Her initial schedules to her bankruptcy

petition listed her income as $3,500, consisting solely of "alimony, maintenance or support

payments." The initial schedules listed her average monthly expenses as $3,077, leaving $423 in

monthly net income. Her initial Form B22C Statement of Current Monthly Income also listed only

this $3,500 in monthly support, and showed that her annualized current monthly income of $42,000

**DRAFT 10/30/12**

was less than the applicable median family income of $60,073. In mid-April 2012, partially in

response to Mr. Seligmann's objection to confirmation, Ms. Hersh filed amended Schedules I and

J and an amended Form B22C. The amended schedules added as additional income $1,487 in

expenses paid by her ex-husband on Ms. Hersh's behalf pursuant to the "Status Quo Order" entered

by the divorce court, for a total of $4,987 in monthly income. The schedules also increased the

figures for a number of expenses, and added new items, for a total of $4,393 in monthly expenses

and a net income of $594. The amended B22C calculated an annualized current monthly income of

$59,843.28, which was just below the applicable median family income.

However, Ms. Hersh's testimony demonstrated that even the amended schedules understated

the total amount of financial support she received from her ex-husband. Her testimony at the

September 27th hearing clarified that her ex-husband paid her an average of $3,500 per month

directly in cash or by check, and that, in addition, he regularly paid her monthly mortgage payment

of $1,472.56 and paid her utilities on her behalf. Ms. Hersh's original schedules showed total utility

expenses of $514/month, and her amended schedules showed total utility expenses of

$714.15/month. She testified that if anything, her amended schedules understated her expenses,

rather than overstated them. She gave no testimony that her ex-husband failed to pay any utility

expense during the 6-month prepetition period, but provided testimony that he had failed to make

certain utility payments post-petition. She testified that her ex-husband's financial situation had

deteriorated and that he sometimes failed to pay her utilities post-petition, requiring her to pay them

herself to avoid shut-off. She testified that between September 2011 and September 2012, she had

to pick up between 1/3 and 1/2 of the overall utility bills. She also testified that at one point her

ex-husband had paid her daughter's tennis club membership, but that he had ceased doing so at some point, requiring Ms. Hersh to pay it. Her initial schedules did not list the tennis club membership, but her amended schedules listed a $275 expense for "Daughter's Educational & Sporting Activity." Ms. Hersh's most recent plan, filed June 29, 2012, proposes to pay $594 per month for 60 months, resulting in a distribution to general unsecured creditors of 25%.

## DISCUSSION

Section 1325(b)(1) allows an unsecured creditor to object to a plan unless the plan either proposes to pay that creditor's claim in full or the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1). "Disposable income" means "current monthly income received by the debtor (other than child support payments … to the extent reasonably necessary to be expended for such child)" minus amounts reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor (together with certain other allowed expenses that are not relevant in this case). 11 U.S.C. § 1325(b)(2). "Current monthly income" means "the average monthly income from all sources that the debtor receives … without regard to whether such income is taxable income" during the 6 months prepetition. 11 U.S.C. § 101(10)(A). Current monthly income includes not only money directly received, but also "includes any amount paid by any entity other than the debtor … on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. §101(10)(B). If the Debtor's "current monthly income" exceeds the median family income of the applicable state for the applicable size of household (often referred to as an

**DRAFT 10/30/12**

"above-median debtor"), then the "applicable commitment period" must be five years instead of three, and such above-median debtor is limited to the expenses listed in Section 707(b)(2) when calculating disposable income. 11 U.S.C. § 1325(b)(3).

While the term "current monthly income" is based on the 6 month period preceding the petition date and the definition of the term "disposable income" uses the term "current monthly income," the Supreme Court has held that the undefined term "projected disposable income" can incorporate certain post-petition facts. The Court held that, when determining projected disposable income, a bankruptcy court should begin the analysis by determining "disposable income" (using average income and expenses during the 6-month prepetition period), but then "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." Hamilton v. Lanning, 130 S. Ct. 2464, 2478 (2010). This ruling was based on the ordinary use of the term "projected." In contrast, the determination as to whether a debtor is an above-median debtor is based on "current monthly income," not "projected disposable income," and is therefore based solely on the average income during the 6 months prepetition, and without respect to expenses.

Here, based on the testimony presented, and despite the Debtor's statement to the contrary in her initial Form B22C and amended Form B22C, she is an above-median debtor. Based on her testimony that during the 6 months prepetition her ex-husband paid her an average of $3,500 per month and paid her mortgage and utilities, and based on the scheduled average amounts of those expenses as $1,472.56 and $714.15, respectively, her current monthly income was $5,686.71. This results in an annualized current monthly income of $68,240.52, more than $8,000 above the

applicable median. Indeed, it may have been even higher, since the testimony was not entirely clear whether Ms. Hersh's husband was paying their daughter's tennis club membership at this time.[1] While Ms. Hersh testified that her husband on occasion failed to pay utilities between September 2011 and September 2012, she gave no testimony that such was the case during the six months prepetition, from February 2011 through July 2011. Her schedules with her petition noted that her ex-husband's income during 2011 had begun to decrease and that "contributions to spousal support [were] going to change for year 2011," but the fact that the statement was phrased in a future tense tends to show that the support had not yet changed during the relevant 6 month prepetition period. Additionally, even if the Court were to give Ms. Hersh all benefit of the doubt and accept that she had to pay half of the utilities during the 6-month prepetition period herself, her current monthly income would still have been $5,329.64. This would result in an annualized income of $63,955.62, which is still almost $4,000 above the median.

The fact that Ms. Hersh is an above-median debtor does not necessarily change the analysis of whether her plan is confirmable, since she already proposed a 5-year plan. However, I am concerned that, based on the Debtor's Form B22C, the Chapter 13 Trustee might not have given sufficient scrutiny to Ms. Hersh's claimed expenses, which should be limited in accordance with Section 1325(b)(3). In any event, since as discussed below, the proposed plan would not provide for all of the Debtor's projected disposable income even accepting her claimed expenses, any such objection can be addressed later should the Debtor file an amended plan.

---

[1] While the definition of "disposable income" excludes certain child support payments from the calculation of disposable income, the term "current monthly income" does not. See, e.g., In re Wise, No. 10-32441, 2011 WL 2133843 (Bankr. S.D. Ill. May 27, 2011). Whether a debtor is above-median is based solely on current monthly income, not disposable income. 11 U.S.C. § 1325(b)(3), (4).

As discussed above, since even Ms. Hersh's amended schedule I understated her income by

at least $699.71,[2] her amended Schedule J should have shown a monthly net income of at least

$1,293.71 rather than $594. Under the "forward-looking approach" espoused by the Supreme Court

in Lanning, this is only the starting point, however, and the Court can consider subsequent changes

"that are known or virtually certain at the time of confirmation." Ms. Hersh argues that it is now

known or virtually certain that her ex-husband will not continue to regularly pay all of her utility

costs. I am less certain – since it seems he would be violating the divorce court's order by failing

to do so. Therefore, even if he failed to pay those expenses in the past, it seems Ms. Hersh would

be able to seek to enforce the divorce court order against him to collect the arrears. On the other

hand, Ms. Hersh expressed uncertainty about her ability to do so, in part because of the vagueness

of the court order. However, even if Ms. Hersh's ex-husband has and continues to miss certain

utility payments, she admitted that he *has* been paying at least half of them, or even two-thirds. This

means that, even if the Court were to accept all of Ms. Hersh's contentions, her projected disposable

income would still be between $947 and $1056.[3] Since she does not propose to pay Mr. Seligmann's

claim in full, and has only proposed to pay $594 per month into the plan, Mr. Seligmann's objection

under Section 1325(b)(1) will be sustained and granted.

## CONCLUSION

For the foregoing reasons, the Court will deny confirmation of the June 29, 2012 Plan and

will grant the Debtor 14 days to file an amended plan consistent with this Opinion. The foregoing

---

[2] For some reason, Ms. Hersh's amended schedules listed her mortgage expense as $1472.56, but listed the amount of expenses paid by her ex-husband as $1487, $14.44 higher than the mortgage. This excess can be applied to the unscheduled utility payment income: $714.15-$14.44=$699.71.
[3] If she paid 1/2 of the utility bills, $594+$367.07-$14.44=$946.63.
If she paid 1/3 of the utility bills, $594+$476.10-$14.44=$1,055.66.

**DRAFT 10/30/12**

constitutes findings of fact and conclusions of law as required by <u>Fed. R. Civ. P.</u> 52(a) and <u>Fed. R.</u>

<u>Bankr. P.</u> 7052. A separate order shall be entered giving effect to the determinations reached herein.

DATE: <u>November 1, 2012</u>

The Honorable Manuel Barbosa

United States Bankruptcy Judge